UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMI NECO SCHMIDT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06CV265SNL |
| ) | |
| CITY OF BELLA VILLA, ET. AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff has filed this §1983 action alleging violations of her Fourth and Fourteenth Amendment rights, following her arrest, in connection with the alleged photographing of a tattoo of her "exposed pubic area" by defendant Chief of Police Edward Locke, Jr. She further asserts a claim of municipal liability based upon several theories, including but not limited to, delegating policy-making authority to defendant Locke; failing to properly train, supervise and/or control defendant Locke, and allowing defendant Locke to engage in a pattern of similar transgressions. Finally, she asserts a state law claim for violation of Missouri's strip search law, §544.193 R.S.Mo. against defendant Locke. This matter is before the Court on defendants' motion to strike expert witness endorsements (#33), filed May 29, 2007. Responsive pleadings have now all been filed. This matter is set for jury trial on the Court's docket of August 20, 2007.

The instant motion addresses the purported plaintiff's experts' testimony of Mark McCloskey and Lt. Anthony Russo. However, in response to the motion, plaintiff has informed the court (and opposing counsel) that the endorsement of Mark McCloskey in this cause of action was in error. *See*, Plaintiff's Withdrawal of Endorsement of Mark McCloskey as Expert Witness

in Schmidt case- Was Clerical Error (#36), filed June 7, 2007. Therefore, the Court will deny the motion as it pertains to Mark McCloskey as moot.

Upon review of the parties' pleadings, the submitted exhibits, and the relevant caselaw, the Court will grant the remainder of the instant motion and strike the endorsement of Lt. Anthony Russo as plaintiff's expert.

On pages 2 and 3 of the plaintiff's reply memorandum[1], she "bullet points" the specific areas that Lt. Russo addressed in his report (and similarly in his deposition). Essentially, he offers opinions, among other things, concerning the manner of arrest of plaintiff, the possible motive for arresting plaintiff, alternative "methods" for effectuating the arrest of plaintiff, the improperness of a strip search according to the "facts" of the arrest, the failings of the City of Bella Villa police manual, and the propriety of warrant checks. Defendants assert that these opinions are outside the scope of the pleadings, and fail to meet the requirements of admissibility under the Federal Rules of Evidence.[2] Plaintiff contends that Lt. Russo is a self-described "police practices and procedures expert" and the case is about proper police procedures.

Federal Rule of Evidence 702 provides for the admission of expert testimony if certain prerequisites are met:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue , a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise, if (1) the testimony
> is based upon sufficient facts or data, (2) the testimony is the

---

[1] Document #35, filed June 7, 2007.

[2] Interestingly, the instant motion does not make a Daubert challenge to the proposed expert testimony, and neither party requests a Daubert hearing. *See*, Daubert v. Merrill Dow Pharmaceutical, Inc., 509 U.S. 579 (1993). Although the Court concurs that a hearing is not necessary in this matter, it will still do a brief Daubert review of the matter at hand.

> product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In making this determination, the court acts as a "gate-keeper" to ensure that all expert testimony or evidence admitted at trial is relevant, reliable, and "will assist the trier of fact to understand the evidence or to determine a fact in issue." Daubert v. Merrill Dow Pharmaceutical, Inc., 509 U.S. at 589.

In the present case, the issues are quite clear: 1) whether defendant Locke violated plaintiff's Fourth and Fourteenth Amendment rights by allegedly taking improper photos of her tattoo; 2) whether defendant Locke violated plaintiff's rights under Missouri strip search law(s) by allegedly taking improper photos of her tattoo; and 3) whether defendant City of Bella Villa is municipally liable for improperly delegating final-policy making authority to defendant Locke and/or improperly training, supervising, and/or controlling defendant Locke. This is **not** a case concerning the protocol in connection with the arrest of plaintiff. She herself states that "Chief Locke properly arrested her". *See*, Plaintiff's Memorandum in Opposition (#35), pg. 1. Therefore, any opinion, factual or legal, rendered by Lt. Russo regarding the arrest (or non-arrest of the driver) is simply irrelevant to the issues present in this case.

As for his opinions regarding the necessity of a strip search under the alleged facts of this case, such an opinion is an improper legal conclusion on the issue of probable cause. Probable cause is an ultimate question of law for the court; whereas, "[t]he jury's role is limited to settling disputes as to predicate facts." Peterson v. City of Plymouth, 60 F.3d. 469, 475 (8th Cir. 1995). In Peterson, *supra.*, the Eighth Circuit Court of Appeals struck the testimony of a "police practices and procedures expert" because his testimony only went to the reasonableness of the defendant officers' conduct in light of Fourth Amendment standards. Such testimony was

3

considered not to be fact-based opinions, but rather impermissible legal conclusions. Id., at 475.

Lt. Russo's opinions regarding defendant Locke's post-arrest behavior focuses on whether he views such actions as "reasonable" under the alleged circumstances; i.e. sending plaintiff to restroom to allegedly take photos in the first instance, availability of a female police officer from the county, appropriateness of taking photographs of a tattoo on a private area of a corpse. His opinions are not helpful to the jury as the trier of fact, but rather, impose his legal conclusions on the jury.

Furthermore, his opinions regarding the existence or non-existence of police procedures are not relevant to any issue in this case. Plaintiff's claims do not include any in connection with alleged deficiencies in the police manual. His general opinion that the police manual is lacking in detail regarding traffic stops, bonding procedures, EMS procedures[3] is irrelevant to the constitutional issue in dispute. The same goes for his opinion as to defendant Locke's failure to do an arrest warrantor record check prior to arresting plaintiff or in order to obtain her true identity.

Finally, the Court is concerned with Lt. Russo's lack of "expertise" in the area(s) of his testimony. Lt. Russo was a traffic patrolman in the 1990s; and most recently (since 2004) the commander of operational planning in the Chief of Police for the St. Louis Police Department's office. Prior to 2004, he was a lieutenant/watch commander in District 6 of St. Louis City. Deposition of Lt. Anthony Russo, pgs. 8-9. As the commander in operational planning, he "is in charge of a unit in the chief's office that is responsible for coordinating and preparing security operations plans for every major and smaller special event in the city." Russo Deposition, pg. 9.

---

[3]Deposition of Lt. Anthony Russo, pgs. 43-44.

He has never been a police academy instructor, nor has ever authored any publications on police work or civil rights violations.  Russo Deposition, pg. 8.

There is nothing in his deposition or in his expert report which indicates whether or not he has ever been involved in a strip search situation, esp. one involving the arrest of a woman.  There is nothing to indicate whether he himself has conducted a strip search of a female arrestee or has disciplined a male officer for conducting a strip search of a female arrestee. There is nothing in his deposition or report which provides an explanation or any link between his experience as a patrol officer and/or commander of a unit responsible for the security planning of special events in the City of St. Louis with the conclusions he reaches in his report.  He speculates as to defendant Locke's "motivation" for allegedly wanting to arrest plaintiff as an "attractive female" and not the driver.  He further opines about the fear and vulnerability to intimidation that people experience in custody.  However, nowhere in his report or deposition does he provide any educational or work experience as a psychologist, psychiatrist, counselor, or any mental health professional.

Essentially, all Lt. Russo offers is his opinions on the properness of the arrest of plaintiff and the alleged post-arrest actions of defendant Locke.  His opinions do not assist the jury in reaching ultimate fact determinations, but rather, invade the purview of the Court by offering legal conclusions as to the reasonableness, pursuant to Fourth Amendment standards, of defendant Locke's actions; and ultimately, the defendant City's responsibility for such alleged actions.  Lt. Russo's opinions are for the most part legal conclusions outside the realm of admissible expert testimony.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to strike (#33) be and is **GRANTED** as to the expert designation of Lt. Anthony Russo. His report and all purported testimony shall be stricken from the record and considered inadmissible at trial.

**IT IS FINALLY ORDERED** that defendants' motion to strike (#33) be and is **DENIED AS MOOT** as to the expert designation of Mark McCloskey. Mr. McCloskey's expert designation has been voluntarily withdrawn by plaintiff.

Dated this __26th__ day of July, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE